IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RUSSELL THOMPSON and<br>THOMASINA THOMPSON, H/W, | :<br>: CIVIL ACTION<br>: |
| Plaintiffs, | : NO. 11-5410 |
| v. | : |
| | : |
| KULICKE KONECRANES GMBH, et al., | : |
| | : |
| Defendants. | : |

## OPINION

Slomsky, J.                                                                                                August 3, 2012

### I.    INTRODUCTION

This case involves allegations of negligence, products liability, and breach of warranty arising from the injuries sustained by Plaintiffs Russell and Thomasina Thompson following an incident involving a crane at the Aker Philadelphia Shipyard.  Plaintiffs seek to remand this case to state court because they contend that there is not complete diversity of citizenship among the parties.  Defendants Ingenieurtechnik und Maschinenbau GMBH ("IMG") and Reading Crane and Engineering Company ("Reading Crane") ask the Court to retain jurisdiction, primarily arguing that Defendant Reading Crane is "fraudulently joined."  The Court is not persuaded that the joinder of Reading Crane is fraudulent.  For reasons that follow, because complete diversity of citizenship among the parties is lacking, the Court will grant the Motion to Remand the case to the Court of Common Pleas of Philadelphia County.

### II.   PROCEDURAL BACKGROUND

On March 16, 2011, Plaintiffs commenced this action in the Philadelphia County Court of Common Pleas against Defendants Kulicke Konecranes GMBH ("KKG"), KCI Konecranes

1

International PLC ("KCI"), IMG, and Reading Crane. (Doc. No. 1-4.) Pertinent to this Opinion, Plaintiffs and Reading Crane are citizens of Pennsylvania. (Id.) KKG and IMG are citizens of Germany and KCI is a citizen of Finland. (Id.)

On August 26, 2011, Defendant IMG filed a Notice of Removal pursuant to 28 U.S.C. §§ 1441 and 1446. (Doc. No. 1.) In the Notice of Removal, IMG asserts that the Court has original jurisdiction over the case based on diversity of citizenship jurisdiction required by 28 U.S.C. § 1332(a). (Id. at 8.) IMG also contends that Reading Crane is "fraudulently joined" as a Defendant in order to trigger the "forum defendant rule" found in 28 U.S.C. § 1441(b), which proscribes removal where at least one defendant is a citizen of the forum state.

On September 19, 2011, Plaintiffs filed a Motion to Remand the matter to state court pursuant to 28 U.S.C. § 1447(c), invoking the forum defendant rule and arguing that Defendant Crane is not fraudulently joined. (Doc. No. 8.) Defendants oppose remand, and two Defendants—IMG and Reading Crane—have filed briefs in opposition to Plaintiffs' motion. (Doc. Nos. 12 and 14.) The Court held a hearing on the Motion to Remand on October 27, 2011. (Doc. No. 18.) Following the hearing, the Court ordered limited discovery and supplemental briefing to clarify conflicting affidavits regarding the involvement of Reading Crane with the crane that has given rise to Plaintiffs' claims.[1] (Doc. No. 19.) The Court has considered the

---

[1] In ruling on a motion to remand premised on alleged jurisdictional defects, "the district court must focus on the plaintiff's complaint at the time the petition for removal was filed . . . [and] must assume as true all factual allegations of the complaint." Steel Valley Auth. v. Union Switch & Signal Div., 809 F.2d 1006, 1010 (3d Cir. 1987) (citations omitted). However, a court can examine more than just the pleadings to identify "indicia" of fraudulent joinder. In re Briscoe, 448 F.3d 201, 219 (3d Cir. 2006). In doing so, the court must not venture "from the threshold jurisdictional issue into a decision on the merits." Id. (quoting Boyer v. Snap-on Tools Corp., 913 F.2d 108, 112 (3d Cir. 1990) (quotation marks omitted)). Therefore, in deciding this Motion, the Court has also considered the Supplemental Memoranda filed by the parties (Doc.

parties' briefs, exhibits, and oral arguments, and has conducted an independent review of the allegations in the Complaint in reaching the decision that this case should be remanded to the Court of Common Pleas of Philadelphia County.

### III.   FACTUAL BACKGROUND

This action arises from an incident that took place at Aker Philadelphia Shipyard, where Aker is a shipbuilder. (Doc. No. 1-4 ¶¶ 24-25; Doc. No. 24 at 2.) Aker employed Plaintiff Russell Thompson as a crane operator at the Shipyard. (Doc. No. 1-4 ¶¶ 19-22, 24-25; Doc. No. 24 at 2.) On June 1, 2009, Plaintiff was operating an "A-frame" crane identified as "SN 23511.2" (also referred to as the "subject Crane" or "crane A-2"), which was designed to be operated by a "tethered pendent remote control." (Doc. No. 1-4 ¶¶ 7-10, 19-22, 24-25.) The length of the tethering of the remote control required Plaintiff Russell Thompson, while operating the crane, to be placed "in an area where a crane load could fall." (Id. ¶¶ 19-22.) On the day of the incident, Plaintiff was operating the crane when a steel plate weighing more than 1,200 pounds fell from the crane and on top of him. (Doc. No. 1-4 ¶ 25; Doc. No. 23 at 2.)

As can be imagined, the impact from the steel plate caused Russell Thompson numerous injuries. He has suffered from several serious permanent injuries, including damage to his skull, ribs, brain, and cognitive function. (Doc. No. 1-4 ¶¶ 25, 28.) Consequently, he has undergone

---

Nos. 23, 24, and 25.)

On March 13, 2012, Defendant IMG filed a Motion for Leave to File a Reply to Plaintiffs' Supplemental Memorandum of Law and attached a proposed Reply to the Motion. (Doc. No. 26.) On March 26, 2012, Plaintiffs filed a Response in Opposition to Defendant IMG's Motion for Leave to File a Reply. (Doc. No. 27.) Defendant IMG's Motion for Leave to File a Reply will be granted, and the Court has considered the arguments in the Reply brief as well.

considerable medical treatment and endured immense physical pain (id. ¶ 28), and he will continue to need vast medical care (id. ¶ 30). Additionally, he has suffered from scarring, deformity, pain, humiliation, embarrassment, disfigurement, loss of well-being, a significant decrease in his ability to engage in routine activities, and a loss of life's pleasures. (Id. ¶ 29.) His injuries have prevented Plaintiff from earning wages and will continue to restrict his earning capacity. (Id. ¶ 31.) Because of the above, Plaintiff's wife, Plaintiff Thomasina Thompson, has brought a claim of loss of consortium against all Defendants. (Doc. No. 1-4 ¶¶ 88-89.)

     Each count in the Complaint alleges a common law claim arising under the laws of the Commonwealth of Pennsylvania. Counts I through III allege that Defendants KKG, KCI, and IMG were negligent in the design, manufacture, and distribution of the crane that caused Plaintiff Russell Thompson's injuries. (Doc. No. 1-4 ¶¶ 32-43.) Count IV alleges that Defendant Reading Crane was negligent in the design, manufacture, sale, maintenance, repair, and inspection of the crane. (Id. ¶¶ 44-48.) In Counts V through VII, Plaintiffs bring a products liability claim against Defendants KKG, KCI, and IMG as suppliers of the allegedly defective crane. (Id. ¶¶ 49-69.) Counts VIII through X each allege a breach of warranty claim against Defendants KKG, KCI, and IMG for breaching express and implied warranties by introducing into the stream of commerce a crane that was unmerchantable, unfit, and unsafe "for the ordinary and particular purposes for which [the crane] was supplied." (Id. ¶¶ 70-87.) In Count XI, Plaintiff Thomasina Thompson brings a claim of loss of consortium against all Defendants. (Id. ¶¶ 88-89.)

     The only claims brought against Defendant Reading Crane are the negligence claim in Count IV of the Complaint and the loss of consortium claim in Count XI of the Complaint. As

part of the argument that Reading Crane is fraudulently joined, Defendant IMG argues in the Notice of Removal that the facts in the Complaint do not give rise to a colorable claim against Reading Crane.  In support of this argument, IMG has attached to the Notice of Removal the August 26, 2011 Affidavit of John Graham, the Senior Manager of Facilities and Services of Aker Philadelphia Shipyard.  (Doc. No. 1-6.)  In this affidavit, Graham stated:

> Based on my review of the Aker Philadelphia Shipyard maintenance and servicing records, there are no such records in our possession indicating that the Reading Crane and Engineering Company, a/k/a Pollock Research & Design, Inc., provided maintenance services with respect to the Subject Crane.

**(**Doc. No. 1-6 ¶ 3.)

In support of the Motion to Remand, Plaintiffs argue that the evidence proffered by Defendant IMG in the Notice of Removal demonstrates "internal inconsistencies showing that the crane identified by Defendant IMG as the subject crane is not the subject crane at all."  (Doc. No. 8 at 16.)  The crane in question here is an A-frame crane, but the documentation produced by Graham and attached to the Notice of Removal provides information about a "crane of a completely different configuration."  (Doc. No. 8 at 17.)  Plaintiffs note that the documentation from Aker depicts a "consol jib crane" instead of an A-frame crane.[2]  (Doc. No. 8 at 17 (citing Doc. No. 1, Ex. D).)  Plaintiffs also point out that the crane identified by Defendant IMG as the subject crane is identified by serial number 108238/2, which is not the same as the serial number of the crane identified in the Complaint.  (Doc. No. 8 at 17.)

Plaintiffs have proffered additional evidence in support of their motion that highlights an inconsistency regarding the identification of the subject crane and whether Reading Crane was

---

[2] Plaintiffs further explain: "A jib crane is a type of crane where a horizontal member (jib), supporting a movable hoist, is mounted to a floor-mounted pillar."  (Doc. No. 8 at 17.)

5

involved in the maintenance, service, or inspection of the crane.  Specifically, Plaintiffs attached another Affidavit of John Graham, dated October 25, 2011.  (Doc. No. 16.)  In this later affidavit, Graham attested:

> Among the companies which have conducted crane inspections of crane A-2, the A-frame crane, is a company known as Reading Crane.  I am aware of Reading Crane conducting inspections of crane A-2 before June 1, 2009 though: a) Personal observation; b) Documentation submitted by Reading Crane; and c) other records of crane inspection.

(Doc. No. 16.)

Because of these inconsistencies, the Court ordered the parties to undertake limited discovery to resolve the conflicting Graham Affidavits.  As a result of the limited discovery, the parties do not dispute that Reading Crane conducted safety inspections on the A-2 crane involved in the incident giving rise to Plaintiffs' claims.  (See, e.g., Doc. No. 23 at 3; Doc. No. 24 at 4-5; Doc. No. 25 at 2-3.)

**IV.    LEGAL STANDARD**

A defendant may remove a civil action from state court to federal court if the case could have been originally brought in the federal forum.  28 U.S.C. § 1441(a).  However, where removal is based on diversity of citizenship under 28 U.S.C. § 1332(a), the requirements of this statute must be met.  "A civil action otherwise removable solely on the basis of the jurisdiction under section 1332(a) of this title may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought."  28 U.S.C. § 1441(b)(2).  "For a removal predicated upon diversity of citizenship, a proper exercise of federal jurisdiction requires satisfaction of the amount in controversy requirement as well as complete diversity between the parties, that is, every plaintiff must be of diverse state citizenship

from every defendant." In re Briscoe, 448 F.3d 201, 215 (3d. Cir. 2006).  A case removed to federal court may be remanded to state court if "at any time before final judgment it appears that the district court lacks subject matter jurisdiction . . . ." 28 U.S.C. § 1447(c).  Removal statutes should be strictly construed "against removal and all doubts should be resolved in favor of remand."  Batoff v. State Farm Insurance Co., 977 F.2d 848, 851 (3d Cir. 1992) (quoting Steel Valley Auth. v. Union Switch & Signal Div., 809 F.2d 1006, 1010 (3d Cir. 1987)).  The defendant seeking removal based on diversity of citizenship jurisdiction bears the burden to establish that jurisdiction exists.  Dukes v. U.S. Healthcare, Inc., 57 F.3d 350, 358 (3d Cir. 1995).

**V.    DISCUSSION**

    **A.    Fraudulent Joinder**

Defendant IMG removed this action based upon diversity of citizenship jurisdiction.  However, Plaintiffs and Defendant Reading Crane are both citizens of Pennsylvania.  In recognition of this fact, Defendant IMG contends that Defendant Reading Crane is fraudulently joined as a party and should therefore be disregarded for purposes of determining diversity of citizenship jurisdiction.   As previously noted, in the Motion to Remand, Plaintiffs argue that Reading Crane is not fraudulently joined and the matter should be remanded to state court.

"In the absence of a substantial federal question[,] the removing defendant may avoid remand only by demonstrating that the non-diverse party was fraudulently joined." Briscoe, 448 F.3d at 217 (quoting Batoff v. State Farm Insurance Co., 977 F.2d 848, 851 (3d Cir. 1992)).  If the court finds that the non-diverse defendant is fraudulently joined, "the court can disregard, for jurisdictional purposes, the citizenship of certain [non-diverse] defendants, assume jurisdiction over a case, dismiss the [non-diverse] defendants, and thereby retain jurisdiction.'" Briscoe, 448

7

F.3d at 216 (quoting Mayes v. Rapoport, 198 F.3d 457, 461 (4th Cir. 1999)). If, however, the court determines the joinder is not fraudulent, the removed action must be remanded to state court. Briscoe, 448 F.3d at 216 (citing 28 U.S.C. § 1447(c)).

In the Third Circuit, a defendant is fraudulently joined "if 'there is no reasonable basis in fact or colorable ground supporting the claim against the joined defendant, or no real intention in good faith to prosecute the action against the defendant or seek a joint judgment.'" Briscoe, 448 F.3d at 216 (quoting Abels v. State Farm Fire & Casualty Co., 770 F.2d 26, 32 (3d Cir. 1985)). A district court may determine that a party has been fraudulently joined on factual or legal grounds. In re Avandia Marketing Sales Practices and Products Litigation, 624 F. Supp. 2d 396, 411-12 (E.D. Pa. Feb. 25, 2009).

The moving defendant "carries a heavy burden of persuasion" to demonstrate that the non-diverse defendant has been fraudulently joined. Batoff, 977 F.2d at 851. "'[I]f there is even a possibility that a state court would find that the complaint states a cause of action against any one of the [non-diverse] defendants, the federal court must find that joinder was proper and remand the case to state court.'" Id. (quoting Boyer v. Snap-on Tools Corp., 913 F.2d 108, 111 (3d Cir. 1990)). "Where there are colorable claims or defenses asserted against or by diverse and non-diverse defendants alike, the court may not find that the non-diverse parties were fraudulently joined based on its view of the merits of those claims or defenses." Batoff, 977 F.2d at 851 (internal citation and quotation marks omitted).

As noted above, in evaluating whether a defendant is fraudulently joined, the court must:

> focus on the plaintiff's complaint at the time the petition for removal was filed. In so ruling, the district court must assume as true all factual allegations of the complaint. It also must resolve any uncertainties as to the state of controlling substantive law in favor of the plaintiff.

8

Briscoe, 448 F.3d at 217 (quoting Batoff, 977 F.2d at 851-52).  The Third Circuit has emphasized that the district court must not conduct a merits determination within the context of a fraudulent joinder inquiry, and must be careful not to delve too deeply into substantive matters:

> [T]he inquiry into the validity of a complaint triggered by a motion to dismiss under Rule 12(b)(6) is more searching than that permissible when a party makes a claim of fraudulent joinder.  Therefore, it is possible that a party is not fraudulently joined, but that the claim against that party ultimately is dismissed for failure to state a claim upon which relief may be granted.

Batoff, 977 F.2d at 852; see Briscoe, 488 F.3d at 217-18 (citing and discussing Batoff).

Accordingly, unless a plaintiff's claims against the non-diverse defendant can be deemed "wholly insubstantial and frivolous," the joinder will not be considered fraudulent.  Briscoe, 488 F.3d at 218.  In other words, "a finding of fraudulent joinder is usually reserved for situations where recovery from the non-diverse defendant is a clear legal impossibility.  Fraudulent joinder should not be found simply because plaintiff has a weak case against a non-diverse defendant." West v. Marriott Hotel Services, Inc. & LWC Services, Inc., No. 10-4130, 2010 WL 4343540, *3 (E.D. Pa. Nov. 2, 2010).

Here, Defendants attack Plaintiffs' claims against Reading Crane on factual and legal grounds.  First, IMG and Reading Crane argue that the factual allegations are not specific enough to allege that Reading Crane should be liable for negligence.[3]  (Doc. No. 12.)  Despite the discovery of evidence showing that Reading Crane had some involvement with the crane in question, Defendants further contend that the allegations are insufficient to constitute a

---

[3] Defendants IMG and Reading Crane originally argued that no evidence demonstrates that Reading Crane had any involvement with the crane leading to Russell Thompson's injuries and Thomasina Thompson's loss of consortium claim. (Doc. No. 12.) As noted above, Defendants now agree that Reading Crane was in fact involved with the crane A-2 at issue in this case. (Doc. No. 24 at 4-5; Doc. No. 25 at 2-3.)

reasonable basis in fact to bring a negligence claim against Reading Crane.  (Doc. Nos. 24 and 25.)  Second, Defendants contend that the Complaint alleges no colorable claim under Pennsylvania law for negligent inspection.  (Doc. No. 12.)  As discussed below, however, Plaintiffs have alleged sufficient facts to reasonably join Reading Crane as a party because they have alleged a colorable claim under Pennsylvania tort law.

To determine whether Plaintiffs' negligence claim against Defendant Reading Crane is colorable, the Court must examine Plaintiffs' theory of liability under Pennsylvania law against Reading Crane.  In Pennsylvania, in order to prevail on a claim of negligence, a plaintiff must establish that he was owed a duty by the defendant, the defendant breached that duty, and as a result of the breach, the plaintiff suffered damages.  See Casselbury v. American Food Service, 30 A.2d 510, 512-13 (Pa. Super. Ct. 2011).  Plaintiffs assert that the duty of Reading Crane arises from a contractual agreement between Reading Crane and Aker Shipyard through which Reading Crane undertook to inspect crane A-2.  (Doc. No. 1-4 ¶ 45; Doc. No. 23 at 8.)  In support of their argument, Plaintiffs rely on the Restatement (Second) of Torts § 324A, which provides in relevant part as follows:

> § 324A Liability to Third Person for Negligent Performance of Undertaking
>
> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if . . .
>
>    (b) he has undertaken to perform a duty owed by the other to the third person[.]

The Supreme Court of Pennsylvania has addressed the applicability of § 324A to a case where an alleged duty arises from a contract and has held the following:

> Generally, a party to a contract does not become liable for a breach thereof to one

10

> who is not a party thereto. However, a party to a contract by the very nature of his contractual undertaking may place himself in such a position that the law will impose upon him a duty to perform his contractual undertaking in such manner that third persons—strangers to the contract—will not be injured thereby[.] It is not the contract per se which creates the duty; it is the law which imposes the duty because of the nature of the undertaking in the contract.

Casselbury, 30 A.2d at 513 (quoting Farabaugh v. Pa. Tpk. Comm'n, 911 A.2d 1264, 1283 (2006)) (quotation marks omitted).

Utilizing the above principles, Plaintiffs allege in the Complaint that Defendant Reading Crane undertook the responsibility to inspect the A-frame crane. They assert that a negligent inspection of the crane contributed to the dangerous condition of the crane that gave rise to Plaintiffs' injuries. Assuming these allegations are true, negligent inspection of the crane could give rise to liability for the injuries that befell a third party as a result of a negligent inspection.

Defendants Reading Crane and IMG ask the Court to consider the exact nature of the obligation undertaken by Reading Crane regarding the inspections of the crane. (See, e.g., Doc. Nos. 24 and 25.) Defendants contend that Reading Crane could not be found liable for the type of harm that are central to Plaintiffs' claims. However, at this stage of the litigation, the Court is not permitted to engage in a merits determination to evaluate the exact nature of the inspections Reading Crane undertook through the contractual agreement with Aker Philadelphia Shipyard. Moreover, based on the facts alleged in the Complaint and the law recited above, there is a probability that the state court would find that Plaintiffs have stated a viable cause of action against Defendant Reading Crane.

Again, the Court will not conduct a merits determination or decide whether the claim would survive a Motion to Dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure or a comparable state rule of civil procedure. See Briscoe, 488 F.3d at 217-18. Rather, the Court

must only determine if there is even a possibility that a state court could find that Plaintiffs have set forth a cause of action against Defendant Reading Crane. Batoff, 977 F.2d at 851. Based upon the above analysis of the law and facts, it is evident that Plaintiffs' negligence claim against Reading Crane is not "wholly insubstantial and frivolous." Briscoe, 488 F.3d at 218. As such, Plaintiffs have established a colorable claim of negligence against Defendant Reading Crane, and therefore Reading Crane is not fraudulently joined. For this reason and the lack of diversity of citizenship jurisdiction, the case will be remanded to state court.

### B. Plaintiffs' Request for Fees and Costs

Plaintiffs ask the Court to award them the fees and costs they have incurred as a result of the removal of this case by Defendants. A district court may grant a request for fees and costs if there has been no "objectively reasonable basis" for removal. Martin v. Franklin Capital Corp., 546 U.S. 132, 141 (2005); see also 28 U.S.C. 1447(c) ("An order remanding the case may require the payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."). "A district court has broad discretion to consider the circumstances of each case, but should exercise that discretion in light of the objectives of § 1447(c) – to discourage the use of removals as a means of prolonging litigation and imposing costs on the plaintiff while generally allowing litigants the right of removal." Royal Bank America v. Kirkpatrick, Nos. 11-1058, 11-1112, 2011 WL 4528349, at *5 (E.D. Pa. Sept. 30, 2011) (citing Martin, 546 U.S. at 140-41). There is no evidence that Defendant IMG removed this matter to federal court for improper purposes, such as to prolong litigation or to impose costs on Plaintiffs. Accordingly, since Defendant IMG removed this matter to federal court in good faith, the Court will deny Plaintiffs' request for fees and costs.

## VI. CONCLUSION

For the foregoing reasons, this Court finds that a state court may conclude that the Complaint states a cause of action against Defendant Reading Crane. It follows that there is no complete diversity of citizenship among the parties. In the absence of subject-matter jurisdiction, this case cannot be brought in federal court. Plaintiffs' Motion to Remand this case to the Court of Common Pleas of Philadelphia County will be granted.

An appropriate Order follows.